IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2012-NMSC-024

Filing Date: July 19, 2012

Docket No. 32,589

STATE OF NEW MEXICO,

       Plaintiff-Petitioner,

v.

JOSE ALFREDO ORDUNEZ,

       Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Stephen Bridgforth, District Judge

Gary K. King, Attorney General
Ann M. Harvey, Assistant Attorney General
Santa Fe, NM

for Plaintiff-Petitioner

Jacqueline L. Cooper, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Defendant-Respondent

## OPINION

**DANIELS, Justice.**

**{1}** Defendant Jose Ordunez pleaded guilty to a 2004 fourth-offense aggravated DWI. He was incarcerated for six months and then served a lengthy probationary period. In 2007, Defendant was arrested for another DWI in violation of his 2004 probation conditions, but a probation revocation hearing was not held before the probationary term from the 2004 DWI had expired. The district court concluded that the applicable New Mexico statutes precluded revocation of Defendant's probation after his probationary term had expired and granted Defendant's motion to dismiss.

1

**{2}** We granted certiorari to review the Court of Appeals opinion affirming the district court's dismissal of the case. *State v. Ordunez*, 2010-NMCA-095, 148 N.M. 620, 241 P.3d 621. We affirm the conclusions of the district court and the Court of Appeals that Defendant's probation could not be revoked after it had expired. We disagree with the Court of Appeals' interpretation that the applicable statutory provisions governing sentence credit for time served on probation were those in effect in 2007, the time of the alleged probation violation (giving no credit for time served), instead of the statute in effect in 2004, the time of the underlying DWI offense for which Defendant was sentenced (giving full credit for time served).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

**{3}** In November 2004, Defendant was indicted for a felony fourth-offense aggravated DWI and two related misdemeanors. Following Defendant's subsequent guilty pleas to aggravated DWI contrary to NMSA 1978, Section 66-8-102(G) (2004), and driving while his license was suspended or revoked contrary to NMSA 1978, Section 66-5-39 (1993), and his formal admission to three prior misdemeanor DWI convictions, the district court sentenced Defendant to 2½ years imprisonment, including the statutory maximum of eighteen months for Defendant's fourth-offense DWI, to be followed by one year on parole. See § 66-8-102(G) (2004). The court suspended execution of all but six months of incarceration and ordered Defendant to serve two years on probation. Defendant's probation was scheduled to expire on October 19, 2007.

**{4}** On August 17, 2007, before the probationary term for Defendant's August 2004 offense was completed, he was arrested for a new aggravated DWI and other traffic offenses. On September 7, 2007, the State filed a petition to revoke his probation. The district court calendared a probation revocation hearing for October 25, 2007, a week after the scheduled end of Defendant's probation term, and later reset the hearing for December 20, 2007. On November 21, 2007, the State filed an amended petition to revoke probation, alleging Defendant had again violated the strict no-drinking terms of his probation, as acknowledged by him and as indicated by breath test results showing he had a blood alcohol content of 0.11 on November 14, 2007.

**{5}** At the December revocation hearing, the district court granted Defendant's motion to dismiss the probation revocation proceedings for lack of jurisdiction to revoke after the probationary term had expired. The Court of Appeals affirmed the dismissal in a divided opinion, *see Ordunez*, 2010-NMCA-095, ¶¶ 16, 18, and we granted the State's petition for writ of certiorari.

## II.     STANDARD OF REVIEW

**{6}** This case presents no factual dispute for us to review, and we must only determine whether the district court correctly interpreted and applied the law. "We review issues of statutory and constitutional interpretation de novo." *State v. Lucero*, 2007-NMSC-041, ¶ 8,

142 N.M. 102, 163 P.3d 489.

## III. DISCUSSION

### A. Relevant Statutory History

**{7}** Resolution of this case requires consideration of the historical development of several related statutory provisions. The first is criminal procedure statute NMSA 1978, Section 31-21-15(B) (1989), which provides that in a probation violation hearing, once the court finds a violation, "the court may continue the original probation, revoke the probation and either order a new probation . . . or require the probationer to serve the *balance* of the sentence imposed or any lesser sentence." (Emphasis added.) We have interpreted the word "balance" in a predecessor version of this statutory provision, NMSA 1953, § 41-17-28.1(B) (1963), to mean that where a court decides to revoke probation based on a probation violation, the court must give credit against the defendant's sentence for time previously served on probation. *See State v. Reinhart*, 79 N.M. 36, 37-38, 439 P.2d 554, 555-56 (1968) (interpreting the statutory language of Section 41-17-28.1(B) (1963) to require credit for time served on probation, whether the sentence was originally suspended or deferred).

**{8}** NMSA 1978, Section 31-20-8 (1977), also generally applicable to criminal cases, provides with respect to probation pursuant to a suspended sentence that "[w]henever the period of suspension expires without revocation of the order, the defendant is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime." Similar provisions in NMSA 1978, Section 31-20-9 (1977), apply to expiration of probation under a deferred sentence.

**{9}** For decades, New Mexico case law has interpreted these statutory provisions as depriving courts of jurisdiction to revoke probation or to impose any sanctions for violation of probation conditions once the probationary period has expired, even for violations occurring and revocation motions filed before expiration of probation. *See State v. Travarez*, 99 N.M. 309, 311, 657 P.2d 636, 638 (Ct. App. 1983) (holding that the 1963 enactments of the provisions of current Sections 31-21-15(B) and 31-20-9 operated to deprive a court of jurisdiction to revoke probation after expiration of a deferred-sentence probationary period, in a case where the defendant's probation time equaled the maximum period of incarceration that could have been imposed for the underlying offense); *see also State v. Lara*, 2000-NMCA-073, ¶ 11, 129 N.M. 391, 9 P.3d 74 (holding that the reasoning in *Travarez* applies with equal force in a suspended-sentence case under Section 31-20-8 and concluding that after the date the probation term ends the "court lacks further jurisdiction over the defendant, even though the motion to revoke the sentence has . . . been filed" before the end of the probation term).

**{10}** The final statute applicable to the issues in this case, NMSA 1978, § 66-8-102 (2010), defines the elements of and prescribes the punishments for DWI crimes in particular. In 2004, when Defendant committed the underlying offense for which he was sentenced, this

3

statute contained a no-credit-for-probation-time-served provision that applied only to first-time DWI offenders. *See* § 66-8-102(E) (2004). In 2007, after Defendant's offense of conviction but before his alleged probation violation, the Legislature amended Section 66-8-102 to add a no-credit provision applicable to all DWI offenders, including second and subsequent DWI offenders. Section 66-8-102(S) (2007) (amended 2010) provided:

> With respect to this section and notwithstanding any provision of law to the contrary, if an offender's sentence was suspended or deferred in whole or in part and the offender violates any condition of probation, the court may impose any sentence that the court could have originally imposed and credit shall not be given for time served by the offender on probation.

**{11}** The practical effect of this difference is that the 2004 version denied credit for time served on probation only for defendants convicted of a misdemeanor first DWI offense while the 2007 version denied credit for defendants convicted of any DWI offense, first or subsequent, misdemeanor or felony. Because Defendant's DWI conviction in this case was a felony fourth offense, whether the no-credit provision applied to Defendant depends on whether the 2004 or the 2007 version of the DWI statute governed revocation of probation and credit for time served on his 2004 DWI offense.

**{12}** The district court and the parties all considered the controlling statutes for Defendant's revocation proceedings to be the 2004 provisions in effect at the time of the commission of the DWI offense for which Defendant's sentence was imposed, partially suspended, and ultimately sought to be executed; but the Court of Appeals concluded sua sponte that the 2007 no-credit provisions enacted between the time of the offense and the time of the probation violation applied to the proposed revocation and resentencing of Defendant. *See Ordunez*, 2010-NMCA-095, ¶¶ 3-4. Because the differences between the 2004 and 2007 no-credit DWI provisions determine the precedential effect of the *Travarez-Lara* line of cases on the outcome of this case, we first address whether the Legislature intended its 2007 no-credit amendments to apply retroactively to sentences for previously committed DWI offenses.

**B.    The Statutes Governing Sentence Credit for Probation Served Were Those in Effect When the Offense of Conviction Was Committed**

**{13}** The 2007 no-credit amendment provided neither textual direction nor any other suggestion that the Legislature intended the change to apply to past DWI offenses. "We begin with the proposition . . . that 'New Mexico law presumes a statute to operate prospectively unless a clear intention on the part of the legislature exists to give the statute retroactive effect.'" *Swink v. Fingado*, 115 N.M. 275, 283, 850 P.2d 978, 986 (1993) (citation omitted); *see also* NMSA 1978, § 12-2A-8 (1997) ("A statute or rule operates prospectively only unless the statute or rule expressly provides otherwise or its context requires that it operate retrospectively."). New Mexico is not alone in this approach. "The presumption against retroactive legislation . . . 'embodies a legal doctrine centuries older

4

than our Republic.'" *Vartelas v. Holder*, ___U.S.___, ___, 132 S. Ct. 1479, 1486 (2012) (citation omitted).

**{14}** While the presumption against retroactive legislation provides useful guidance, another canon of statutory construction compels a statutory interpretation that avoids retroactive application in this case: the requirement that courts must try to adopt an interpretation that upholds the constitutionality of the statute. *See State v. Flores*, 2004-NMSC-021, ¶ 16, 135 N.M. 759, 93 P.3d 1264 (construing a sentencing statute to avoid constitutional infirmity). In this case, a statutory interpretation that would result in a retroactive increase in punishment for a previously committed criminal offense raises serious constitutional ex post facto concerns. *See State v. Romero*, 2011-NMSC-013, ¶ 10, 150 N.M. 80, 257 P.3d 900 (noting that the ex post facto considerations are whether a change in the law operates to "make criminal a previously innocent act, increase the punishment, or change the proof necessary to convict the defendant"). "The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994).

**{15}** The prohibition against ex post facto laws is such a fundamental component of the American system of criminal justice that it is addressed twice in the United States Constitution as a limit on the powers of both the federal and state governments, and it is also separately incorporated into the New Mexico Constitution. U.S. Const. art. I, § 9, cl. 3 ("No . . . ex post facto Law shall be passed [by Congress]."); U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law."); N.M. Const. art. II, § 19 ("No ex post facto law . . . shall be enacted by the legislature.").

**{16}** The State does not dispute that the 2007 version of Section 66-8-102 would impose a greater punishment than the 2004 statute by increasing the permissible combined sentence of eighteen months of probation and incarceration to a permissible combined sentence of thirty-six months for Defendant's DWI offense. What the State argues instead is that applying the 2007 version of the statute was not a retroactive application because Defendant's 2007 probation violation constituted a "new offense" for which the 2007 no-credit provisions should be applied. This argument ignores the reality that revocation of probation does not impose punishment for a new offense; it is the triggering mechanism for execution of a sentence for the original underlying criminal offense. "A probation violation is not a crime" for which a sentence is imposed. *State v. Ortega*, 2004-NMCA-080, ¶ 8, 135 N.M. 737, 93 P.3d 758 (holding that the sentence carried out on revocation of probation is based on commission of the underlying crime for which probation had been imposed and not on the act of violating probation).

**{17}** New Mexico courts have long recognized that a statute that increases the punishment allowable for a previously committed offense violates the ex post facto ban. *See Woo Dak San v. State*, 36 N.M. 53, 55, 7 P.2d 940, 941 (1931) (rejecting an ex post facto challenge to a change in the mode of execution of a death sentence because it did not "increase the punishment"); *State v. Adam M.*, 1998-NMCA-014, ¶¶ 4, 7, 10-11, 124 N.M. 505, 953 P.2d

5

40 (holding that an amendment extending the maximum age from eighteen to twenty-one for children's court jurisdiction over juvenile probation and incarceration could not be retroactively applied to a child whose offense had occurred before the amendment because the "ex post facto prohibition does not allow for a law that increases the punishment for an offense after the offense has been committed").

**{18}** Although New Mexico courts have not directly addressed an attempted retroactive application of a statute diminishing sentence credit, courts in other jurisdictions have consistently held that it would result in impermissible ex post facto lawmaking. *See, e.g.*, *Weaver v. Graham*, 450 U.S. 24, 27-28 (1981) (holding that retroactive application of a statute reducing prison good time credit eligibility violated the ex post facto clause); *United States v. Paskow*, 11 F.3d 873, 878-79 (9th Cir. 1993) (noting that there is no difference between parole and supervised release for ex post facto consequences and that circuit courts addressing the issue have held "without exception . . . that the ex post facto clause is violated when a defendant's eligibility for release is adversely affected under a statute that was not in effect at the time of the defendant's underlying crime but was adopted before the defendant committed the act for which his parole was revoked"); *Fender v. Thompson*, 883 F.2d 303, 307 (4th Cir. 1989) (emphasizing that revocation and forfeiture of sentence credit "is not a punishment for the second offense [but is rather] a sanction that extends the time remaining on the petitioner's original sentence" and thus holding that the forfeiture statute amended after Defendant's conviction and sentencing could not "be applied to revoke [his] preexisting eligibility for parole on the life sentence imposed [for the underlying] convictions"); *People v. Peach*, 350 N.E.2d 583, 585-86 (Ill. App. Ct. 1976) (holding that a statute changing the credit award for probation time served from mandatory to discretionary could not constitutionally be applied to a defendant whose underlying offense occurred prior to the amendment); *People v. Moon*, 337 N.W.2d 293, 294-95 (Mich. Ct. App. 1983) (noting that both federal and state ex post facto considerations mandate that "statutes restricting good time are to be applied prospectively only"). We have found no precedent in any jurisdiction that stands for a contrary conclusion.

**{19}** We therefore conclude that retroactive application of the 2007 no-credit version of Section 66-8-102 to Defendant's sentence for his 2004 offense would violate the ex post facto clauses of the United States and New Mexico Constitutions. As a result, we need not consider whether the separate prohibitions in Article IV, Section 34 of the New Mexico Constitution ("No act of the legislature shall affect the right or remedy of either party, or change the rules of evidence or procedure, in any pending case."), the only constitutional provision raised in the Court of Appeals opinion, would also operate to invalidate retrospective application of the 2007 statute. *See Woo Dak San*, 36 N.M. at 55, 7 P.2d at 941 (discussing retroactivity protections of the ex post facto clause and Article IV, Section 34 and concluding that the primary protection against retroactive punishment is provided "by the ex post facto provisions of the state and Federal Constitutions").

**{20}** Because of the presumption against legislative retroactivity and, more fundamentally, because of the dictates of the ex post facto clauses of the United States and New Mexico

6

Constitutions, we hold that the 2007 no-credit statutory amendment did not apply to probation revocation for Defendant's 2004 offense. According to the statutory requirements in effect at the time of his offense, by the time of his revocation hearing Defendant had completed his probation and had earned full credit against his maximum possible sentence.

## C.      After Defendant Had Finished His Prescribed Term of Probation and Earned Full Statutory Credit Against Any Further Punishment, the District Court Could No Longer Revoke His Probation

**{21}**      Both the majority and dissenting opinions in the Court of Appeals recognized that, under Section 31-20-8, when a defendant has finished his prescribed term of probation and has earned full service credit against any further potential punishment, established New Mexico precedent deprives the courts of any further revocation authority over the probationer. *See Ordunez*, 2010-NMCA-095, ¶ 11 (citing with approval *Lara*, 2000-NMCA-073, ¶¶ 3, 6-9); *id.* ¶¶ 19, 21 (Vanzi, J., dissenting) (same). The majority held that the determining factor in the district court's jurisdiction to act further was whether the probation term had ended prior to revocation, regardless of whether Defendant was subject to the 2007 amendment denying credit earned for time served. *See id.* ¶ 11. In contrast, the dissent concluded that the district court continued to have jurisdiction to revoke probation after Defendant's probationary term had technically expired, reading the 2007 amendment as impliedly revoking the applicability of the jurisdictional limitation contained in Section 31-20-8. *See id.* ¶¶ 19-21 (Vanzi, J., dissenting).

**{22}**      Because we have concluded, contrary to the Court of Appeals, that the statutory provisions applicable at the time Defendant committed his 2004 offense required giving him full credit against any possible further sentence, we do not reach the now-hypothetical issue relating to the effect of the 2007 statutory amendments which divided that court. "[I]t is not within the province of an appellate court to decide abstract, hypothetical or moot questions in cases wherein no actual relief can be afforded." *Atchison, Topeka & Santa Fe Ry. v. State Corp. Comm'n*, 79 N.M. 793, 794, 450 P.2d 431, 432 (1969); *see also Allen v. LeMaster*, 2012-NMSC-001, ¶ 26, 267 P.3d 806 (declining to address hypothetical issues that could have no effect on the resolution of a case); *Cable v. Wells Fargo Bank N.M., N.A. (In re Cable Family Trust Dated June 10, 1987)*, 2010-NMSC-017, ¶ 42, 148 N.M. 127, 231 P.3d 108 (same).

## IV.      CONCLUSION

**{23}**      Because the district court correctly determined that the full-credit statutory provisions in effect at the time of Defendant's 2004 offense applied to the calculation of his sentence credit and correctly determined that his probation could no longer be revoked after it expired, we affirm the district court's dismissal of Defendant's probation revocation proceedings. Although we agree with its affirmance of the district court's dismissal order, we disapprove the Court of Appeals opinion to the extent it erroneously concluded that a statute enacted after the underlying offense could decrease Defendant's entitlement to

sentence service credit and thereby increase the severity of his punishment for the offense.

**{24}    IT IS SO ORDERED.**

_____
**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____
**PETRA JIMENEZ MAES, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for _State v. Ordunez_, Docket No. 32,589**

**APPEAL AND ERROR**
Standard of Review

**CRIMINAL LAW**
Driving While Intoxicated

**CRIMINAL PROCEDURE**
Credit for Time Served
Probation
Revocation of Probation

**STATUTES**
Interpretation