IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2015-NMSC-024**

**Filing Date: June 25, 2015**

**Docket No. 33,775**

**DARA HEM,**

      **Plaintiff,**

**v.**

**TOYOTA MOTOR CORP., et al.,**

      **Defendants,**

**and**

**TURNER AND ASSOCIATES, P.A.,**

      **Claimant-in-Interpleader,**

**v.**

**REGENTS OF THE UNIVERSITY OF
NEW MEXICO, on behalf of THE PUBLIC
OPERATION, UNIVERSITY OF NEW
MEXICO HOSPITAL,**

      **Claimant-in-Interpleader.**

**CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW MEXICO
M. Christina Armijo, U.S. District Court Judge**

Tax, Estate & Business Law, Ltd.
Barry D. Williams
James T. Reist
Albuquerque, NM

Turner & Associates
C. Tab Turner

1

North Little Rock, AR

for Plaintiff and Turner & Associates, P.A., Claimant-in-Interpleader Turner and Associates, P.A.

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jeffrey M. Croasdell
Todd E. Rinner
Albuquerque, NM

Law Offices of Bruce S. McDonald
Tracy M. Jenks
Albuquerque, NM

Bowman and Brook, L.L.P.
Kurt Christopher Kern
Dallas, TX

for Defendants

Sutin, Thayer & Browne, P.C.
Susan H. Hapka
Andrew J. Simmons
Albuquerque, NM

for Claimant-in-Interpleader Regents of The University of New Mexico, on behalf of the public operation, University of New Mexico Hospital

## OPINION

**VIGIL, Chief Justice.**

{1}     In this case we determine whether an agreement by a state hospital to reduce the amount of a lien for medical services rendered violates Article IV, Section 32 of the New Mexico Constitution. This matter comes before the Court by way of certification from the United States District Court for the District of New Mexico pursuant to NMSA 1978, Section 39-7-4 (1997) and Rule 12-607 NMRA (2007). The questions certified to this Court arose out of an interpleader proceeding in the federal district court between Turner & Associates (Turner), attorneys for the plaintiff Dara Hem (Hem), and the University of New Mexico Hospital (UNMH), which treated Hem for injuries. UNMH argues it has priority over settlement funds pursuant to an agreement between itself and Hem's initial attorney, Clay Miller (Miller), in which Miller agreed to subrogate his statutory priority to settlement funds to UNMH. In exchange, UNMH agreed to reduce the amount of the lien imposed for Hem's outstanding medical bills. Turner argues that this agreement is unconstitutional.

2

Therefore, Turner argues that it has a priority right to collect fees and costs out of the interpleaded settlement funds prior to the satisfaction of the hospital lien, pursuant to the Hospital Lien Act, NMSA 1978, Section 48-8-1 to -7 (1961, as amended through 1995).

**{2}** In order to resolve the matter, the federal district court certified two questions to this Court concerning the application of Article IV, Section 32 of the New Mexico Constitution. The first question is whether the first clause of Section 32 is a limitation applicable only to acts of the Legislature, as this Court held in *State v. State Investment Company*, 1925-NMSC-017, ¶ 13, 30 N.M. 491, 239 P. 741, or if it applies to the State in general, as indicated in *Gutierrez v. Gutierrez*, 1983-NMSC-016, ¶ 8, 99 N.M. 333, 657 P.2d 1182. The second certified question is whether Section 32 prohibits a state hospital from compromising a debt owed by a patient-debtor, where the amount of the debt owed is not disputed, but the patient-debtor's ability to pay is doubtful and the compromise agreement is supported by consideration.

**{3}** In response to the first certified question, we hold that the first clause of Section 32 was correctly interpreted in *State Investment* and is strictly a limitation on the Legislature. Our answer to the second certified question is that Article IV, Section 32 of the New Mexico Constitution does not prohibit UNMH from agreeing to compromise the amount owed by a patient-debtor.

**{4}** In so deciding, we revisit this Court's interpretation of Article IV, Section 32 in *Gutierrez*. Because we find nothing in the Constitution to support *Gutierrez's* holding that a state hospital cannot compromise on a debt owed to it unless there is a good faith dispute as to the amount or liability for that debt, we conclude that *Gutierrez* must be overruled to the extent that it so holds. We hold that Article IV, Section 32 of the New Mexico Constitution simply requires that in order to extinguish debts or liabilities owed to the State, there must either be payment into the treasury or a proper court proceeding.

## I.    BACKGROUND

**{5}** In March 2007, Hem brought suit in a Texas federal court after he was seriously injured in an accident. Hem was traveling through northern New Mexico when his Toyota truck separated from the U-Haul trailer it was towing, causing the truck to roll over several times. After treating Hem for his injuries, UNMH recorded a hospital lien for Hem's outstanding medical bills. The lien would attach to any future judgment or settlement he might procure from a lawsuit, pursuant to the Hospital Lien Act. *See* § 48-8-1(A) ("Every hospital located within the state that furnishes emergency, medical or other service to any patient injured by reason of an accident . . . is entitled to assert a lien upon that part of the judgment, settlement or compromise going, or belonging to such patient, less the amount paid for attorneys' fees, court costs and other expenses necessary thereto in obtaining the judgment, settlement or compromise. . . ."). Although Hem did not dispute the amount owed, UNMH agreed to compromise on the lien amount and accept a lesser amount as payment in full. In exchange, one of Hem's attorneys, Miller, agreed to give up his statutory priority

3

over settlement funds already obtained from U-Haul and some anticipated settlement funds from Toyota, so UNMH would be paid first. *See id.* (providing that a hospital lien attaches to the amount of a patient's recovery remaining after the payment of attorneys' fees). This compromise was confirmed in a letter written by Miller to UNMH (the UNMH Agreement). After sending the letter, Miller paid the U-Haul settlement funds he had already received to UNMH, per the UNMH Agreement.

**{6}** In September 2009, the Texas court transferred Hem's case against Toyota to New Mexico. The case went to trial in January 2011, and while the jury deliberated, the parties reached a "Contingent Confidential Settlement Agreement" (Toyota Agreement), under which Hem would recover whether or not the jury found in his favor, but the amount of recovery was dependent on the jury's verdict. The jury ultimately returned a verdict in Toyota's favor, and in February 2011, the federal district court entered a final judgment dismissing the action. In June 2011, Hem filed a motion to enforce the Toyota Agreement. Because there was a dispute over whether the settlement funds should be paid to UNMH or to Turner, Toyota filed a motion in interpleader to allow the federal district court to determine who was entitled to the funds. The federal district court entered an order permitting Toyota to pay the amount remaining on the UNMH lien into the court registry and discharged Toyota from the lawsuit. At this time, the remaining dispute in the interpleader proceeding is between Turner and UNMH; Hem claims no interest in the settlement funds.

**{7}** UNMH argues that it is entitled to be paid out of the Toyota Settlement funds before Turner because of the terms of the UNMH Agreement. Turner argues that the UNMH Agreement is unenforceable in light of Article IV, Section 32 of the New Mexico Constitution, thereby entitling Hem's attorneys to the money pursuant to the Hospital Lien Act. *See* § 48-8-1(A) (providing that attorneys fees are taken out of settlement proceeds before such proceeds are used to pay a hospital lien). The disagreement over what Section 32 requires engendered the certified questions. We accepted certification.

## II.    DISCUSSION

**{8}** The certified questions require us to interpret Article IV, Section 32 of the New Mexico Constitution. "We review issues of statutory and constitutional interpretation de novo." *State v. Ordunez*, 2012-NMSC-024, ¶ 6, 283 P.3d 282 (internal quotation marks and citation omitted).

**{9}** The provision at issue, Article IV, Section 32 of the New Mexico Constitution, reads, in pertinent part:

> No obligation or liability of any person, association or corporation held or owned by or owing to the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by

4

proper proceeding in court.

**A.** **The First Clause of Article IV, Section 32 Is Strictly A Limitation on the Legislature and Is Therefore Not Relevant to These Proceedings**

**{10}** When construing constitutional provisions, we keep in mind that "the rules of statutory construction apply equally to constitutional construction." *State v. Boyse*, 2013-NMSC-024, ¶ 8, 303 P.3d 830 (internal quotation marks and citation omitted). Just as if we were interpreting a statute, to determine the meaning of a constitutional provision, we begin with the language used in the provision and "the plain meaning of that language." *State v. Maestas*, 2007-NMSC-001, ¶ 9, 140 N.M. 836, 149 P.3d 933. Where the meaning of that language is "clear and unambiguous, we must give effect to that language and refrain from further . . . interpretation." *Sims v. Sims*, 1996-NMSC-078, ¶ 17, 122 N.M. 618, 930 P.2d 153 (internal quotation marks and citation omitted).

**{11}** The plain language of the first clause of Section 32–"No obligation or liability of any person, association or corporation held or owned by or owing to the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature"–unambiguously applies solely to the Legislature. N.M. Const. art. IV, § 32. Although it mentions the state generally in the context of debts "owned by or owing *to the state*," the only potential actor referenced in this provision is the Legislature. *Id* (emphasis added). Accordingly, in *State Investment*, this Court held that the first clause of Section 32 restricts only the Legislature from diminishing obligations owed to the State, and therefore the Attorney General and district attorneys were permitted to compromise on the defendant's tax liability. *See* 1925-NMSC-017, ¶ 13. We agree with *State Investment* that the first clause of Section 32 is appropriately characterized as applying only to the Legislature.

**{12}** Although the meaning of the plain language is unambiguous, the first certified question arises from an apparent inconsistency between two New Mexico Supreme Court cases–*State Investment* and *Gutierrez*–that interpreted Section 32. In *Gutierrez*, the Court determined that Section 32 prohibits the State in general from compromising on "the amount owed to it unless a good faith dispute exists as to the amount of indebtedness or liability." 1983-NMSC-016, ¶ 8. However, the *Gutierrez* opinion did not include a holding specific to the first clause of Section 32. *See generally Gutierrez*, 1983-NMSC-016. Because the first clause clearly applies only to the Legislature, we conclude that *Gutierrez* was interpreting the *second* clause of Section 32 requiring a proper court proceeding, not the first clause regarding the Legislature's attempts to compromise debt. Therefore, the conflict between *State Investment* and *Gutierrez* is limited to the interpretation of the second clause of Section 32, which applies to the State in general, and has no bearing on our interpretation of the first clause. Further, as we discuss below, the remaining conflict between the two cases is hereby eliminated because we partially overrule *Gutierrez*.

**{13}** In answering the first certified question, we conclude that the first clause of Section

32 limits only the Legislature. Thus, it is irrelevant to the present case as no act by the Legislature is implicated here. Instead, in order to address the second question concerning whether the UNMH Agreement violates Section 32, we must consider it under the second clause of Section 32, as that clause is a limit on the State generally.

**B.      The UNMH Agreement Does Not Violate Article IV, Section 32 of the New Mexico Constitution**

**{14}**    The second clause of Section 32 provides, "nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court." N.M. Const. art. IV, § 32. The phrase "any such obligation" refers to the language of the first clause describing an "obligation or liability of any person, association or corporation held or owned by or owing to the state, or any municipal corporation therein." *Id*. Unlike the first clause, which provides specifically that these obligations owed to the State cannot be "in any way diminished *by the legislature*," nothing in the second clause limits its application to any specific State entity. *Id*. (emphasis added). Instead, it applies to all obligations owed to the State and provides that such obligations can only be extinguished either by a full payment to the State treasury or by a proper proceeding in court.

**{15}**    Turner relies on this Court's previous interpretation of Section 32 in *Gutierrez* to argue that, because there is no dispute as to the amount owed, the UNMH Agreement is unconstitutional, regardless of whether or not a proper court proceeding occurs. UNMH argues that the proper court proceeding requirement will be satisfied when the federal district court issues its order approving the UNMH Agreement.

**1.      *Gutierrez* Incorrectly Held that Article IV, Section 32 Requires a Good Faith Dispute as to the Amount Owed or Liability**

**{16}**    The question in *Gutierrez* was whether a court could reduce a hospital lien at the patient-debtor's request, when the hospital was unwilling to compromise. 1983-NMSC-016, ¶¶ 1-2, 4. In *Gutierrez*, the plaintiffs were injured in a car accident, and the hospital filed liens for debt incurred as a result of the plaintiffs' treatment. *Id*. ¶¶ 1, 3. When the hospital declined to compromise the lien amounts, the plaintiffs filed complaints asking the district court for an order voiding the hospital liens. *Id*. ¶ 4. The district court denied the motion, determining that it "lack[ed] equitable or discretionary power to void or reduce the amount of . . . the hospital liens." *Id*. ¶ 6. This Court affirmed, holding that the district court could not order the hospital to reduce its lien where there was no dispute as to the validity of the lien amount. *Id*. ¶ 8.

**{17}**    The holdings announced in *Gutierrez* exceeded the scope of the dispute before the Court. The *Gutierrez* Court determined that "the New Mexico Constitution prohibits UNM Hospital from accepting a payment of less than the full amount of an undisputed legal obligation as a satisfaction," *Gutierrez*, 1983-NMSC-016, ¶ 8. The Court added, "The State

6

cannot compromise the amount owed to it unless a good faith dispute exists as to the amount of indebtedness or liability." *Id*. Thus, although *Gutierrez* dealt with a situation in which the hospital did not agree to reduce the amount owed to it, the *Gutierrez* Court's holding would apply even where a state hospital *did* agree to compromise with patient-debtors on its own behalf. *See id*.

**{18}**    The *Gutierrez* Court also held that in order for a state hospital to reduce a debt, there must be a good faith dispute as to the amount owed. *Id*. The Court apparently read this "good faith dispute" requirement into the definition of a proper court proceeding. *See* N.M. Const. art IV, § 32 (providing that no debts owed to the state shall "be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court"). However, Section 32 makes no reference to a good faith dispute. What Section 32 does require is either payment into the treasury or a proper proceeding in court.

**{19}**    In support of this interpretation, the *Gutierrez* Court cited two cases from other jurisdictions–*Wade v. Clemmons*, 377 N.Y.S.2d 415 (Sup. Ct. 1975) and *Dade County v. Bodie*, 237 So.2d 553 (Fla. Dist. Ct. App. 1970). Both *Wade* and *Bodie* are out-of-state cases interpreting the hospital lien acts of their respective states, not the New Mexico Constitution. Further, neither case holds that a state hospital cannot agree to reduce a debt owed to it without a good faith dispute as to liability. In *Bodie*, the hospital did not enter into an agreement to reduce the lien, and the court held that Florida's hospital lien act gave no discretionary power to courts to reduce a hospital's lien amount. 237 So.2d at 554. The court remanded the case for a determination of the validity and appropriate amount of the lien. *Id* at 555. Under *Bodie*, a court cannot reduce a hospital lien in the absence of an agreement unless the validity or amount of the lien is in dispute. This proposition has no application when, as here, the hospital has in fact agreed to compromise the debt owed to it.

**{20}**    On the other hand, in *Wade*, although there was no dispute concerning the amount owed by the plaintiff to the hospital, the hospital agreed to reduce the plaintiff's lien by $1,500. 377 N.Y.S.2d at 418. The plaintiff's attorney argued for a greater reduction, in the amount of $2,433.23, to which the hospital did not agree. *Id*. Although the *Wade* court held that it "d[id] not have discretionary power to impose a reduction of the hospital lien" to the full extent requested by the plaintiff's attorney, it ultimately entered an order reducing the lien "in accordance with [the hospital's] consent." *Id*. at 418, 420. *Wade*, therefore, supports the *Gutierrez* holding that a court cannot force the hospital to reduce the lien where the amount is not in dispute. However, it does not support the determination that a hospital cannot agree to compromise an amount owed to it because the *Wade* court ultimately approved the reduction of the amount to the extent that the hospital agreed to compromise.

**{21}**    Thus, *Bodie* is factually distinguishable from the case at hand because there the hospital did not agree to compromise the amount owed, and the conclusion in *Wade* is actually contrary to the proposition for which it was cited in *Gutierrez*. The *Gutierrez* holding that "the New Mexico Constitution prohibits UNM Hospital from accepting payment of less than the full amount of an undisputed legal obligation as a satisfaction,"

7

1983-NMSC-016, ¶ 8, which relies upon these two cases, is therefore unsupported by precedent. The *Gutierrez* holding that a court lacks the equitable or discretionary power to void or reduce public hospital liens *without* the hospital's agreement and absent a good faith dispute is still good law. However, a public hospital *does* have the authority to compromise on its own accord. We hereby overrule *Gutierrez* to the extent that it holds that the State cannot compromise on debts owed to it unless there is a good faith dispute as to the amount owed or liability.

**{22}** UNMH, as a state hospital, may compromise undisputed obligations with sick or indigent patient-debtors because it is constitutionally permitted to do so. Additional authority for such action can be found in Article IX, Section 14 of the New Mexico Constitution, which provides that, although the state is generally prohibited from "mak[ing] any donation to or in aid of any person, . . . [n]othing in this section prohibits the state or any county or municipality from making provision for the care and maintenance of sick and indigent persons."

**{23}** "[C]onstitutional provisions should be read together and harmonized in their application if possible." *Denish v. Johnson*, 1996-NMSC-005, ¶ 32, 121 N.M. 280, 910 P.2d 914 (internal quotation marks and citation omitted). As discussed, Article IV, Section 32 allows for the extinguishment of debt owed to the State where there is a proper court proceeding. Article IX, Section 14 specially allows for the provision of aid for the care and maintenance of sick and indigent persons. When read together, Article IX, Section 14 and Article IV, Section 32 permit state government to compromise undisputed obligations with sick or indigent patient-debtors, so long as there is a proper court proceeding.

**{24}** Accordingly, we hold that state hospitals may compromise with patient-debtors even when no dispute as to liability or amount owed is present, in accordance with state policies allowing aid to the sick or indigent. To prohibit state hospitals from compromising undisputed patient debts would serve only to require indigent patients seeking settlement to sue for relief rather than allowing them to negotiate with the hospital. This would result in unnecessary litigation and is contrary to state policy, as supported by Article IX, Section 14, and other state laws. *See, e.g.*, Indigent Hospital and County Health Care Act, NMSA 1978, §§ 27-5-1 to -18 (1965, as amended through 2014).

2. **The Requirement of a Proper Proceeding in Court Can Be Satisfied in This Case**

**{25}** Article IV, Section 32 requires all obligations to the state to be satisfied by payment into the treasury or proper proceeding in court. Article IV, Section 32 "is undoubtedly intended to prevent public officials from releasing debts justly owed to the state and to discourage collusion between public officials and private citizens." N.M. Att'y Gen. Op. 69-69 (1969). Absent allegations of fraud, misrepresentation, or mistake, it is to be presumed that these settlements are entered into based upon sufficient and proper facts and in the

utmost good faith by counsel for the state. *State Investment*, 1925-NMSC-017, ¶ 16.

**{26}** A proper court proceeding is satisfied where a court reviews the agreement for issues of corruption, nepotism, etc., and issues an order approving a settlement agreement between a hospital and patient. Here, the federal district court has also reviewed the agreement for the presence of consideration in satisfaction of the pre-existing duty rule. The federal district court notes, and we agree, that it retains jurisdiction over the matter: the parties to the UNMH Agreement are before the federal district court, the federal district court has subject matter jurisdiction over the underlying dispute between Hem and the Toyota Defendants, and the disputed portion of the proceeds of the Toyota Agreement have been deposited into the registry of the federal district court. In the event that the federal district court determines that the UNMH Agreement is enforceable against the proceeds of the Toyota Agreement, the federal district court has the power to issue the judgment contemplated by the "proper proceeding in court" language of Article IV, Section 32. The fact that no court has as yet entered an order approving and enforcing the UNMH Agreement is immaterial. We therefore agree with the federal district court that the present interpleader proceeding is a proper proceeding in court by which the UNMH Agreement may be approved, UNMH's lien reduced, and Hem's debt to UNMH extinguished.

## III.     CONCLUSION

**{27}** We conclude that the UNMH agreement is not prohibited by Article IV, Section 32 of the New Mexico Constitution. We answer the questions certified to this Court as follows: (1) the first clause of Article IV, Section 32 is solely a limitation on the Legislature; and (2) the UNMH Agreement does not violate Article IV, Section 32 of the New Mexico Constitution. We overrule *Gutierrez* and hold that under Article IV, Section 32 a state hospital is permitted to compromise on a debt owed to it where there is payment into the treasury or a proper court proceeding.

**{28}     IT IS SO ORDERED.**

_____
                                    **BARBARA J. VIGIL, Chief Justice**

**WE CONCUR:**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____

9

**EDWARD L. CHÁVEZ, Justice**

_____

**CHARLES W. DANIELS, Justice**