**Certiorari Granted, March 15, 2013, No. 34,013**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-043**

**Filing Date: December 26, 2012**

**Docket No. 31,421**

**STATE OF NEW MEXICO, ex rel.**
**FRANK C. FOY AND SUZANNE B.**
**FOY,**

       **Qui Tam Plaintiffs-Appellants,**

**v.**

**AUSTIN CAPITAL MANAGEMENT, LTD.;**
**AUSTIN CAPITAL MANAGEMENT GP CORP.;**
**CHARLES W. RILEY; BRENT A. MARTIN;**
**DAVID E. FRIEDMAN; WILL JASON ROTTINGER;**
**VICTORY CAPITAL MANAGEMENT INC.;**
**KEYCORP; BEREAN CAPITAL; DUDLEY BROWN;**
**TREMONT GROUP HOLDINGS, INC.;**
**OPPENHEIMER FUNDS, INC.; GARY BLAND;**
**DAVID CONTARINO; BRUCE MALOTT; MEYNERS**
**AND CO.; MARC CORRERA; ANTHONY CORRERA;**
**SANDIA ASSET MANAGEMENT; ALFRED JACKSON;**
**DAVIS HAMILTON AND JACKSON; GUY RIORDAN;**
**JUNIPER CAPITAL; EILEEN KOTECKI; DAN**
**HEVESI; HENRY "HANK" MORRIS; JULIO**
**RAMIREZ; PAUL CROSS; CROSSCORE**
**MANAGEMENT; SDN INVESTORS; PSILOS GROUP;**
**ALBERT WAXMAN; JEFFREY KRAUSS; STEPHEN**
**KRUPA; DAVID EICHLER; DARLENE COLLINS;**
**WETHERLY CAPITAL GROUP; DAN WEINSTEIN;**
**VICKY SCHIFF; QUADRANGLE GROUP; ALDUS**
**EQUITY; SAUL MEYER; MARCELLUS TAYLOR;**
**MATTHEW O'REILLY; RICHARD ELLMAN;**
**DEUTSCHE BANK; DIAMOND EDGE CAPITAL;**
**MARVIN ROSEN; CARLYLE MEZZANINE**
**PARTNERS; CARLYLE GROUP; DB INVESTMENT**
**MANAGERS; TOPIARY TRUST; PARK HILL GROUP;**

1

**DAN PRENDERGAST; CATTERTON PARTNERS; BLACKSTONE GROUP; GOLD BRIDGE CAPITAL; DARIUS ANDERSON; KIRK ANDERSON; ARES MANAGEMENT; INROADS GROUP; CAMDEN PARTNERS; HFV; BARRETT WISSMAN; TAG; AJAX INVESTMENTS; CLAYTON DUBILIER AND RICE; INTERMEDIA; LEO HINDERY; WILLIAM R. HOWELL; CABRERA CAPITAL; MARTIN CABRERA; CRESTLINE INVESTORS; TREMONT PARTNERS, INC.; TREMONT CAPITAL MANAGEMENT, INC.; JOHN DOE #1; and JOHN DOES #3 through #50,**

**Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**John W. Pope, District Judge**

Victor R. Marshall & Associates, P.C.
Victor R. Marshall
Albuquerque, NM

for Appellants

Bowles & Crow
B.J. Crow
Albuquerque, NM

for Appellee Sandia Asset Management

Modrall, Sperling, Roehl, Harris & Sisk PA
Brian K. Nichols
Albuquerque, NM

for Appellees Darlene Collins, Jeffrey Krauss, Psilos Group, Albert Waxman, Dan Weinstein, and Stephen Krupa

Comeau, Maldegen, Templeman & Indall LLP
Marshall G. Martin
Santa Fe, NM

for Appellees Leo Hindery, Intermedia

Modrall, Sperling, Roehl, Harris & Sisk, PA

2

Kenneth L. Harrigan
Albuquerque, NM

for Appellees Crosscore Management, Paul A. Cross, Jeffrey Krauss, Darlene
Collins, Psilos Group, Ares Management, Albert Waxman, David Eichler,
Stephen Krupa, Crestline Investors, Dan Weinstein, Inroads Group, Wetherly
Capital Group

Modrall, Sperling, Roehl, Harris & Sisk P.A.
John R. Cooney
Albuquerque, NM

for Appellee Quadrangle Group

Van Amberg, Rogers, Yepa, Abeita & Gomez, LLP
Ronald J. Van Amberg
Santa Fe, NM

for Appellees Darius Anderson, Kirk Anderson, and Gold Bridge Capital

Michael L. Danoff & Associates PC
Michael L. Danoff
Albuquerque, NM

for Appellees Carlyle Group and Carlyle Mezzanine Partners

Modrall Sperling Roehl Harris & Sisk, PA
Paul M. Fish
Albuquerque, NM

for Appellees Tremont Group Holdings, Tremont Capital Management,
Oppenheimer Funds, Tremont Partners

Scheuer Yost & Patterson, PC
Mel E. Yost
Santa Fe, NM

for Appellees Marvin Rosen and Diamond Edge Capital

Montgomery & Andrews, PA
Stephen S. Hamilton
Santa Fe, NM

for Appellees Austin Capital Management GP Corp., Dudley Brown, Berean

3

Capital, Keycorp, Will Jason Rottinger, David E. Friedman, Riley Brent, Charles Riley, Austin Capital Management, Victory Capital, Gary Bland, Davis Hamilton, Juniper Capital, Alfred Jackson, Anthony Correra, and Marc Correra

Brennan & Sullivan PA
Michael W. Brennan
Santa Fe, NM

for Appellees Park Hill Group, Dan Hevesi, Henry Morris, and Dan Prendergast

Simone, Roberts & Weiss, PA
Stephen M. Simone
Norman F. Weiss
Albuquerque, NM

for Appellee David Contarino

Arland & Associates LLC
William J. Arland III
Santa Fe, NM

for Appellees Marcellus Taylor, Saul Meyer, Richard Ellman, Matthew O'Reilly, and Aldus Equity

French & Associates, PC
Stephen G. French
Albuquerque, NM

for Appellee Guy Riordan

Butt, Thornton & Baehr, PC
Rodney Schlagel
Albuquerque, NM

for Appellee William R. Howell

Silva, Saucedo & Gonzales, PC
Benjamin Silva, Jr.
Albuquerque, NM

for Appellee HFV

Law Office of George "Dave" Giddens, P.C.

George Dave Giddens
Albuquerque, NM

for Appellees Catterton Partners, Camden Partners, SDN Investors, Vicky Schiff,
TAG, Ajax Investments, and Barrett Wissman

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Andrew G. Schultz
Albuquerque, NM

for Appellees DB Investment Managers, Topiary Trust, Deutsche Bank

Basham & Basham, P.C.
Katherine A. Basham
Martin R. Esquivel
Santa Fe, NM

for Appellee Bruce Malott

Robles, Rael & Anaya, PC
Luis E. Robles
Albuquerque, NM

for Appellee Meyners and Company

Gregg Vance Fallick
Albuquerque, NM

for Appellee Bruce Malott

Rubin, Katz, Ahern, Herdman & MacGillivray, P.A.
Frank T. Herdman
Santa Fe, NM

for Appellee Clayton Dubilier and Rice

Madison & Mroz, PA
Michael J. Dekleva
Albuquerque, NM

for Appellee Julio Ramirez

Robert Becker & Associates
Robert W. Becker

Albuquerque, NM

for Appellee Guy Riordan

Keleher & McLeod, P.A.
Sean Olivas
Albuquerque, NM

for Appellee Martin Cabrera and Cabrera Capital

Debevoise & Plimpton, LLP
Mark P. Goodman
Amanda Ulrich
Lisa Howley
New York, NY

for Appellee Victory Capital and Clayton Dubilier and Rice

Fried, Frank, Harris, Shriver & Jacobson, LLP
Peter L. Simmons
New York, NY

for Appellees DB Investment Managers, Topiary Trust, and Will Jason Rottinger

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**     New Mexico's Fraud Against Taxpayers Act, NMSA 1978, §§ 44-9-1 to -14 (2007) (FATA or the Act) was passed in 2007.  The next year, Plaintiffs filed a qui tam action under the Act alleging violations that occurred as early as 2003.  Although these alleged acts predate the effective date of FATA, they fall within the period provided for in FATA's retroactivity provision, Section 44-9-12(A) (applying the Act to violations occurring from 1987 forward).  Defendants argued that FATA's retroactivity provision violates the federal and state Ex Post Facto Clauses and is therefore unconstitutional.  The district court agreed and dismissed that portion of the complaint containing allegations of acts that occurred before the effective date of FATA.  We granted leave to file an interlocutory appeal, and we now affirm.

**I.     BACKGROUND**

**{2}**     Before beginning our discussion of the constitutional question, we provide a short background.  This action is linked to a companion lawsuit, *State ex rel. Foy v. Vanderbilt Capital Advisors, LLC*, D-101-CV-2008-1895 (*Vanderbilt*), with similar allegations from

the same plaintiffs, Frank and Suzanne Foy (Plaintiffs) along with the State of New Mexico (the State). Plaintiffs allege that Defendants—who include Wall Street firms and investment advisors, as well as high-ranking state officials—executed fraudulent schemes that led to the loss of hundreds of millions of dollars at the expense of the State Investment Council (SIC) and the New Mexico Educational Retirement Board (ERB). Plaintiffs also allege that Defendants misrepresented their investment products and services and paid kickbacks and bribes to get business from the SIC and ERB. The complaint alleges that some state officers, including the heads of the SIC and ERB, conspired with their co-defendants to steer state investment funds to firms that were willing to pay kickbacks. Some of the acts are alleged to have occurred as early as 2003, which predates implementation of the Act but falls within its retroactivity provision.

**{3}**     The district court in *Vanderbilt* zeroed in on the issue of FATA's retroactivity provision and ruled that it was an unconstitutional violation of the federal and state Ex Post Facto clauses. The district court in this action eventually adopted the reasoning of the *Vanderbilt* court and severed the retroactivity clause while allowing the rest of the action covering conduct that occurred on July 1, 2007 or later, to continue prospectively. We granted leave for interlocutory appeal to consider the constitutionality of the retroactivity clause. We also allowed parties, in their briefs, to raise the question of whether the case should be dismissed for lack of subject matter jurisdiction. We briefly touch on the question of subject matter jurisdiction and then proceed with our analysis of the constitutionality of FATA's retroactivity provision.

## II.     DISCUSSION

### A.     Subject Matter Jurisdiction

**{4}**     As a preliminary matter, we address the question of subject matter jurisdiction. Defendants ask us to dismiss the complaint for lack of subject matter jurisdiction for two reasons: (1) they say Plaintiffs failed to exhaust their administrative remedies, and (2) they claim that Plaintiffs are barred from bringing an action against state officials. *See* § 44-9-9(B) ("No court shall have jurisdiction over an action . . . against an elected or appointed state official . . . if the action is based on evidence or information known to the state agency to which the false claim was made or to the attorney general when the action was filed."). The district court tentatively denied Defendants' motions to dismiss based on lack of subject matter jurisdiction under both arguments, and the court invited the parties to brief the issue and advance their arguments.

**{5}**     We conclude that both arguments would benefit from factual developments and legal arguments to the court below, and we decline to address the issue of subject matter jurisdiction at this time. *Cf. City of Las Cruces v. El Paso Elec. Co.*, 1998-NMSC-006, ¶ 24, 124 N.M. 640, 954 P.2d 72 (determining that a lower court "is in the best position to resolve, in the first instance, the facts necessary for a determination of the constitutionality" of a given statute); *Schlieter v. Carlos*, 108 N.M. 507, 510, 775 P.2d 709, 712 (1989) (concluding

7

that an appellate court "should exercise its discretion to decide the certified questions only with a full record before it, so that any decision on the constitutionality of [a statute] would not be based upon anecdotal and speculative argument").

## B.    Standard of Review

**{6}**    "We review issues of statutory and constitutional interpretation de novo." *State v. Lucero*, 2007-NMSC-041, ¶ 8, 142 N.M. 102, 163 P.3d 489, *cert. granted*, 2011-NMCERT-011, 150 N.M. 560, 263 P.3d 902.  In doing so, we "give no deference to [a] district court's conclusions of law." *Bounds v. State*, 2011-NMCA-011, ¶ 33, 149 N.M. 484, 252 P.3d 708 (internal quotation marks and citation omitted), *certs. granted*, 2011-NMCERT-001, 150 N.M. 560, 263 P.3d 902.  Legislative enactments are presumed valid, and "we must uphold such enactments unless we are satisfied beyond all reasonable doubt that the Legislature went outside the bounds fixed by the Constitution in enacting the challenged legislation." *Bounds*, 2011-NMCA-011, ¶ 34 (internal quotation marks and citation omitted); *see State v. Segotta*, 100 N.M. 498, 500, 672 P.2d 1129, 1131 (1983) (noting that "we presume [a] statute to be constitutional").  We are guided by the "fundamental principle that courts will not declare a legislative act unconstitutional if there is any reasonable basis upon which it can be upheld." *Bounds*, 2011-NMCA-011, ¶ 34 (internal quotation marks and citation omitted).  "[I]f a statute is susceptible to two constructions, one supporting it and the other rendering it void, a court should adopt the construction which will uphold its constitutionality." *Johnson v. N.M. Oil Conservation Comm'n*, 1999-NMSC-021, ¶ 17, 127 N.M. 120, 978 P.2d 327 (internal quotation marks and citation omitted).

## C.    FATA and the False Claims Act

**{7}**    FATA prohibits the acts of knowingly presenting a false claim for payment from the State, presenting false records to obtain payment from the State, and making false statements to obtain payment.  *See* § 44-9-3(A).  FATA was enacted in 2007 and tracks closely the longstanding federal False Claims Act (FCA).  *Compare* § 44-9-3, *with* 31 U.S.C.A. § 3729 (2011).  *See also* Pamela Bucy et al., *States, Statutes, and Fraud: A Study of Emerging State Efforts to Combat White Collar Crime*, 31 Cardozo L. Rev. 1523, 1535 (2010) (noting that most states' false-claims statutes were passed in recent years, spurred by Congress' "financial incentive for states to pass FCAs that mirror the federal FCA").  The federal act was signed into law during the height of the Civil War, in 1863, by President Abraham Lincoln as an effort to protect the Union cause by combating fraud in military supply contracts.  *See* S. Rep. 99-345, at 8 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273.  The novelty of the original act was that it allowed a private individual, rather than the United States government itself, to bring a qui tam[1] action on behalf of the government.  *See Vt.*

---

[1] Qui tam is short for the British-inspired Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, or "who pursues this action on our Lord the King's behalf as well as his own." *Vt. Agency of Natural Res. v. United States, ex rel., Stevens*, 529 U.S.

*Agency of Natural Res.*, 529 U.S. at 769. As an incentive to act on behalf of the public good, the individual who brings the suit under the FCA is eligible to receive as much as thirty percent of the damages award or settlement. *Id.* at 769-70.

**{8}** Under FATA, any person who violates the statute is liable for "three times the amount of damages sustained by the state[.]" Section 44-9-3. A qui tam plaintiff may recover between ten percent and thirty percent of those proceeds. *See* § 44-9-7(A). The qui tam plaintiff is entitled to between fifteen and twenty-five percent of the proceeds of a successful action or settlement "depending upon the extent to which the qui tam plaintiff substantially contributed to the prosecution of the action[.]" Section 44-9-7(A)(1). The award shall be reduced to ten percent if "the action was based primarily on disclosures of specific information, not provided by the qui tam plaintiff," Section 44-9-7(A)(2); the award to the qui tam plaintiff shall be raised to between twenty-five and thirty percent "[i]f the state does not proceed with an action brought by a qui tam plaintiff and the state prevails in the action[.]" Section 44-9-7(B). A successful qui tam plaintiff also is eligible to recover attorney fees and court expenses, as is the State. Section 44-9-7(D).

**{9}** A unique aspect of New Mexico's Act is that it applies retroactively, covering conduct that occurred as far back as July 1, 1987. *See* § 44-9-12(A). Defendants contend that the damages portion of the Act makes it penal in nature and that applying the statute retroactively would violate the Ex Post Facto Clause, giving rise to this constitutional challenge.

## D. Ex Post Facto Laws

**{10}** Ex Post Facto laws are prohibited by the United States and New Mexico Constitutions. *See* U.S. Const. art. 1, § 10, cl. 1; N.M. Const. art. 2, § 19; *State v. Norush*, 97 N.M. 660, 661, 642 P.2d 1119, 1120 (Ct. App. 1982). "The Latin phrase 'ex post facto' implicates in its literal meaning any law passed 'after the fact.' " *State v. Orduñez*, 2012-NMSC-024, ¶ 14, 283 P.3d 282. The Ex Post Facto Clause (the Clause) is violated when a statute involving retroactivity is passed that "make[s] criminal a previously innocent act, increase[s] the punishment, or change[s] the proof necessary to convict the defendant." *Id.* "One of the purposes of the ex post facto prohibition is to ensure that the accused individual receives fair notice of the crime and its punishment." *State v. Adam M.*, 1998-NMCA-014, ¶ 8, 124 N.M. 505, 953 P.2d 40.

**{11}** Thus, before a court may allow a statute to be applied retroactively, it must determine "whether doing so would violate constitutional prohibitions against ex post facto laws." *State v. Nunez*, 2000-NMSC-013, ¶ 112, 129 N.M. 63, 2 P.3d 264. A key inquiry looks at the nature of the punishment at issue because "the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." *Id.*

---

765, 768 n.1 (2000).

(internal quotation marks and citation omitted). The prohibition does not apply to penalties that are considered remedial in nature. *See Nunez*, 2000-NMSC-013, ¶ 145 (Serna, J., dissenting). Accordingly, we evaluate the type of penalties imposed by FATA.

## E. Nature of Penalties

**{12}** Plaintiffs argue that FATA is safe from the reach of the Ex Post Facto Clause because it is a civil statute and because the Clause applies only to criminal statutes. Noting that the word "civil" is used nineteen times in the statute, Plaintiffs contend that FATA, as a "purely civil statute," imposes no penalties and does not run afoul of the Ex Post Facto Clause. Plaintiffs appear to focus on the wording of the statute rather than on the nature of the statute as a whole. Our Supreme Court has provided us with direction: "[I]n New Mexico, the fact that the Legislature has chosen to label a proceeding 'civil' or 'criminal' is not dispositive of the true nature of that proceeding." *Nunez*, 2000-NMSC-013, ¶ 46; *see State v. Kirby*, 2003-NMCA-074, ¶ 29, 133 N.M. 782, 70 P.3d 772 (disavowing the United States Supreme Court's opinions "that place heavy emphasis on the label attached by the legislative body enacting the penalty"). Rather, it is the character of the statute itself that decides the issue. "Generally, this means that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." *Nunez*, 2000-NMSC-013, ¶ 112 (internal quotation marks and citation omitted).

**{13}** To the extent that Plaintiffs rely on cases they contend hold that the Ex Post Facto Clause applies only to criminal statutes, we are not persuaded. For example, Plaintiffs claim that the United States Supreme Court in *Calder v. Bull*, 3 U.S. 386 (1798), held that the Clause applies only to criminal statutes. *Calder* was not so limited; it consisted of three concurring opinions with one opinion concluding that "ex post facto laws . . . extend to *penal* statutes" and "to the creation, and, perhaps, enhancement of crimes, pains and *penalties*." *Id.* at 397 (emphasis added). The United States Supreme Court has long re-established the principle that the Ex Post Facto Clause applies to statutes that are penal rather than to statutes that are exclusively criminal. *See Trop v. Dulles*, 356 U.S. 86, 96 (1958) (discussing *Calder* and concluding that "these provisions apply only to statutes imposing penalties" and reasoning that "[i]f the statute imposes a disability for the purposes of punishment—that is, to reprimand the wrongdoer, to deter others, etc., it has been considered penal"). Plaintiffs also quote extensively from *Welch v. Henry*, 305 U.S. 134 (1938), to support their contention that courts afford deference to retroactive civil statutes. The *Welch* Court's holding is limited to the proposition that taxation is not considered a penalty and that retroactive imposition of taxes is constitutionally sound. *See id.* at 146, 151.

**{14}** Under New Mexico jurisprudence, Plaintiffs rely on *Colbert v. Journal Publishing Co.*, 19 N.M. 156, 142 P. 146 (1914), to argue that our Supreme Court held that an award of punitive damages in a civil case does not constitute punishment for a crime. The question in *Colbert* was whether a tort plaintiff could be awarded punitive damages when that tort also constitutes a crime. *See id.* at 168, 142 P.2d at 150. Although the Court concluded "that a wrongful act punishable as an offense does not preclude exemplary damages therefor in

10

a civil act sounding in tort," the case did not involve the Ex Post Facto Clause, and the Court did not address the appropriateness of retroactive application of those exemplary damages. *Id.* Therefore, *Colbert* does not provide guidance on the issue before us.

**F.      The Constitutionality of FATA**

**{15}**    Having established that the Ex Post Facto Clause applies to penal statutes, even those labeled civil, we now turn to the question of whether retroactive application of FATA is prohibited.  In such an inquiry, the threshold question is whether "the intention of the [L]egislature was to impose punishment." *Smith v. Doe*, 538 U.S. 84, 92 (2003).  "If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil." *Id.* (alteration, internal quotation marks, and citation omitted)).  Our Supreme Court has outlined the analysis:

> [T]he court must determine whether the sanction established by the legislation was sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect.  Although a civil penalty may cause a degree of punishment for the defendant, such a subjective effect cannot override the legislation's primarily remedial purpose.

*City of Albuquerque v. One (1) 1984 White Chevy Ut.*, 2002-NMSC-014, ¶ 11, 132 N.M. 187, 46 P.3d 94 (citations omitted).

**{16}**    We will assume but not decide that the Legislature intended to craft a civil and nonpunitive statute.  We thus turn to the second part of the inquiry and determine whether a statutory scheme like FATA's is "punitive either in purpose or effect."  To do so we apply the seven-factor test (*Mendoza-Martinez* analysis) set forth in *State v. Druktenis*, 2004-NMCA-032, ¶ 30, 135 N.M. 223, 86 P.3d 1050 (adopting the test established in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963)).  These factors are:

> (1) [w]hether the sanction involves an affirmative disability or restraint[,] (2) whether it has historically been regarded as a punishment[,] (3) whether it comes into play only on a finding of scienter[,] (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence[,] (5) whether the behavior to which it applies is already a crime[,] (6) whether an alternative purpose to which it may rationally be connected is assignable for it[,] and (7) whether it appears excessive in relation to the alternative purpose assigned.

*Kirby*, 2003-NMCA-074, ¶ 28 (emphasis, internal quotation marks, and citation omitted).  We take the seven *Mendoza-Martinez* factors in turn.  Before proceeding, we note that the *Vanderbilt* court below tracked its reading of the seven factors with the analysis in *United States ex rel. Sanders v. Allison Engine Co.*, 667 F. Supp. 2d 747 (S.D. Ohio 2009).  Since

11

the court's decision below and after the briefing in this appeal, *Allison Engine Co.* has been overturned by the Sixth Circuit, which reversed the federal district court's finding that the treble damages provision is punitive in nature and found instead that the sanctions are remedial in nature. *See* 2012 WL 5373532, \*\*12-14 (6th Cir. 2012) (unpublished). While the *Allison Engine Co.* opinion was used as a guide by the *Vanderbilt* court below, we do not rely on it. We instead take a broader view of federal case law and place more emphasis on New Mexico case law.

### 1. Affirmative Disability or Restraint

**{17}** As to the first factor, the civil penalties imposed by FATA do not constitute an affirmative disability or restraint. We conclude that the monetary damages here do not "approach[] the infamous punishment of imprisonment" or "carry the stigma of a criminal conviction." *Kirby*, 2003-NMCA-074, ¶ 30 (finding that the Securities Act is more remedial than punitive under the first factor) (alteration in original) (internal quotation marks and citation omitted). This factor falls in favor of finding FATA to be remedial in nature.

### 2. Historically Regarded as Punishment

**{18}** While we noted in *Kirby* that "monetary assessments are traditionally a form of civil remedy," *id.* ¶ 31 (internal quotation marks and citation omitted), in the case before us, we are dealing with treble damages, a unique form of monetary penalty. Our appellate courts have not squarely decided the issue of whether treble damages are historically regarded as punishment and we therefore turn to federal law for guidance.

**{19}** "The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." *Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981); *see United States ex rel. Baker v. Cmty. Health Sys., Inc.*, 709 F. Supp. 2d 1084, 1112 (D.N.M. 2010) (finding that FCA sanctions, including treble damages, "have historically been regarded, at least in part, as punitive"); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 970-72 (2d Cir.1985) (stating that the punitive nature of the treble damages provision in the Trademark Counterfeiting Act of 1984 could raise ex post facto concerns). By contrast, in areas outside the realm of the FCA, the United States Supreme Court has found some treble damages provisions to be remedial in nature. *See, e.g.*, *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406 (2003) (finding the treble damages in the RICO racketeering statute to be remedial); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 240-41 (1987) (same); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 485 (1977) (describing Section 4 of the Clayton Act regulating antitrust behavior to be "in essence a remedial provision"). However, even in the antitrust realm, where treble damages awards have been a fixture for more than a century, the Court has stated that "treble damages were designed in part *to punish* past violations of the antitrust laws" and "serve as a means of *deterring* antitrust violations and of compensating victims." *Am. Soc'y of Mech. Eng'rs, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 575-76 (1982) (emphasis added). Even a nearly seventy-year-old case relied on by

12

Plaintiffs, *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 550 (1943), which found the old double damages provision of the FCA to be a form of restitution to make the government whole, suggested that a treble damages award might cross over into the nature of punitive damages.

**{20}**    We thus focus solely on treble damages provisions under the FCA. Notwithstanding case law to the contrary, Plaintiffs rely on the United States Supreme Court's recent discussion of treble damages, *Cook County, Illinois v. United States ex rel. Chandler*, 538 U.S. 119 (2003), for the proposition that monetary damages such as those found in the FCA "have historically and traditionally been treated as civil remedies." It is notable that *Chandler*, while an FCA case, dealt with neither the Ex Post Facto Clause nor the idea of double jeopardy; instead, its sole question was whether municipalities qualified as "persons" subject to qui tam actions under the act. *Id.* at 122. Thus, the Court was not concerned, as we are here, with weighing the punitive aspects of the FCA against its remedial aspects; rather, the *Chandler* Court was focused on whether the statute had any remedial aspects whatsoever, which would justify upholding the longstanding presumption that municipalities were subject to the FCA despite amendments made by Congress in 1986. *Id.* at 133. The *Chandler* Court did not disavow its earlier opinion in *Vermont Agency of Natural Resources*, which characterized the FCA as punitive; the Court merely noted that "it is important to realize that treble damages have a compensatory side, serving remedial purposes in addition to *punitive objectives*." *Chandler*, 538 U.S. at 130 (emphasis added). The Court stated that "the treble damages ceiling has a remedial place under this statute" and concluded that "the force of th[e] punitive nature in arguing against municipal liability is not as robust as if it were a pure penalty in all cases." *Id.* at 131-32. Thus, *Chandler* did not balance the punitive and remedial qualities of the FCA's treble damages provision.

**{21}**    Although not binding on this Court, we find persuasive the federal courts that have concluded that the treble damages provision of the FCA is sufficiently punitive so as to bar retroactive application of its damages. *See, e.g.*, *Cmty. Health Sys., Inc.*, 709 F. Supp. 2d at 1110; *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 956 n.24 (10th Cir. 2008); *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 734 (10th Cir. 2006) (Hartz, J., concurring in part, dissenting in part) ("The Act is punitive in two respects. The availability of treble damages, even though it has a compensatory side, also has a punitive character[.] In addition, [Section] 3729(a)(7) of the Act provides for a penalty of $5,000 to $10,000 regardless of actual damages." (internal quotation marks and citations omitted)); *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 233 (D. Mass. 2011) (same); *United States v. Hawley*, 812 F. Supp. 2d 949, 958-59 (N.D. Iowa 2011). *But see United States ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 500 (D. Conn. 2010) (stating that the FCA's sanctions have "been primarily viewed as civil" over the years).

**{22}**    New Mexico's approach to multiplied damages also finds such sanctions to be punitive in nature, albeit under different statutes and in different contexts. *See Hale v. Basin Motor Co.*, 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990) (stating that the "[m]ultiplication of damages pursuant to statutory authority [such as the Unfair Practices

Act] is a form of punitive damages" and barring the award of both statutory treble damages and common law punitive damages because both are punitive in nature); *Blake v. Hoover Motor Co.*, 28 N.M. 371, 374, 212 P. 738, 739 (1923) (dismissing as "harsh" the treble damages provision of the ancient statute of Gloucester punishing a tenant for waste); *Chavarria v. Fleetwood Retail Corp.*, 2005-NMCA-082, ¶ 45, 137 N.M. 783, 115 P.3d 799 (expressing "difficulty discerning any appreciable difference in the levels of proof" between a treble damages award under the Unfair Practices Act and common law punitive damages), *rev'd in part on other grounds by* 2006-NMSC-046, 140 N.M. 478, 143 P.3d 717; *McLelland v. United Wisconsin Life Ins. Co.*, 1999-NMCA-055, ¶¶ 10, 25, 127 N.M. 303, 980 P.2d 86 (citing *Hale* for the proposition that the trebling of a damages award "ordered by the court is a form of punitive damages" and taking note of the argument from one party that "the only punitive damages that could be awarded under the [Unfair Practices Act] were the treble damages that could be awarded by the court"); *Roberts v. Am. Warranty Corp.*, 514 A.2d 1132, 1135 (Del. Super. Ct. 1986) (concluding that "the provision for treble damages is a form of punitive damages").

**{23}** Based on federal court analysis of the FCA and our case law involving statutes with multiplied damage provisions, we conclude that a treble damages award is mostly punitive in nature. Accordingly, this factor favors a determination that FATA's treble damages provision is penal in nature.

### 3. Finding of Scienter Required

**{24}** FATA requires a finding of scienter. Under the statute, a person may not: "*knowingly* present, or cause to be presented . . . a false or fraudulent claim for payment or approval"; "*knowingly* make or use . . . a false, misleading or fraudulent record or statement"; "*knowingly* buy . . . public property from any person that may not lawfully sell or pledge the property"; "*knowingly* make or use . . . a false, misleading or fraudulent record or statement to conceal, avoid or decrease an obligation to pay or transmit money or property to the state"; or "*conspire* to defraud the state" or "conspire to make . . . a false, misleading or fraudulent record." Section 44-9-3(A) (emphasis added). Accordingly, FATA sanctions apply only on a finding of scienter, and this factor falls in favor of finding FATA to be penal in nature.

### 4. Promote the Traditional Aims of Punishment

**{25}** Punishment is commonly assumed to include the twin components of deterrence and retribution. In New Mexico, "[d]eterrence is a way of using the punishment of a defendant as an example to others who might be tempted to commit the same crime. It is an announcement to the world of the consequences for those who are caught committing the prohibited act." *Nunez*, 2000-NMSC-013, ¶ 85. A deterrent "must amount to more than recompense or restitution." *Id.* (internal quotation marks and citation omitted). "If it is clear that the sanction greatly exceeds the quantum of harm, then it is punitive. *Id.* ¶ 89.

**{26}**     As noted above, the United States Supreme Court has concluded that treble damages represent "an intent to *punish* past, and to *deter* future, unlawful conduct." *Texas Indus., Inc.*, 451 U.S. at 639 (emphasis added) (internal quotation marks and citation omitted); *see Am. Soc'y of Mech. Eng'rs, Inc.*, 456 U.S. at 575 (observing that treble damages were "designed in part *to punish* past violations of the antitrust law" and "also designed *to deter* future antitrust violations" (emphasis added)); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) (stating that "the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat *to deter* anyone contemplating business behavior in violation of the antitrust laws" (emphasis added)), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984).

**{27}**     Those declarations, however, do not end the inquiry because "the fact that the regulatory scheme has some incidental deterrent effect does not render the sanction punishment." *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 633, 904 P.2d 1044, 1058 (1995).  "A monetary sanction . . . must be described as having a deterrent or retributive purpose if it is not designed to compensate the government for its losses." *Id.* at 634, 904 P.2d at 1059 (emphasis omitted).  More recently, our Supreme Court again cautioned that civil damages awards, in order to be considered remedial, must be in proportion to the losses suffered.  *See Nunez*, 2000-NMSC-013, ¶ 87 ("A statute that attempted to, for example, recompense the government for its investigation and prosecution costs, would devise a fine that reasonably approximated the dollar amount of the government's efforts, based upon past average expenditures.").

**{28}**     We now look to the damages available to Plaintiffs under FATA to see if the sanctions exceed the government's losses and regulatory costs.  The statute provides:

>     A person who violates Subsection A of this section shall be liable for:
>
>          (1) three times the amount of damages sustained by the state because of the violation;
>
>          (2) a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000) for each violation;
>
>          (3) the costs of a civil action brought to recover damages or penalties; and
>
>          (4) reasonable attorney fees, including the fees of the attorney general or state agency counsel.

Section 44-9-3(C).  Before even considering the impact and disbursement of treble damages, we note that a successful plaintiff is entitled to recover attorney fees and the costs of bringing a qui tam action, both of which would fall under the rubric of compensating for government losses.  However, we cannot say the same for the treble damages provision or

15

the "civil penalty" of up to $10,000 per violation. Such obvious penalties, in the absence of compensatory purposes, exhibit the qualities of deterrence and retribution intended to punish the offender.

**{29}** As to the treble damages award, one-third goes toward compensating the government for its loss. Almost, but not all of, another third (up to thirty percent) could go toward rewarding the qui tam plaintiff. The destination of the final third proves more troublesome. The United States Supreme Court has suggested that, with respect to the FCA, the final third could represent compensatory damages and prejudgment interest on the principal amount. *See Chandler*, 538 U.S. at 131. We find several problems with that line of reasoning as applied to the facts before us: (1) it is an amorphous calculation that cannot be established in general for all cases; (2) FATA separately allows for reimbursement of all costs incurred in bringing an action, including attorney fees; (3) FATA does not allow damages for prejudgment interest; (4) even if the final third were purely compensatory in nature, that would leave the additional fines of up to $10,000 per violation unaccounted for.

**{30}** In sum, because FATA's wide-ranging sanctions go beyond merely compensating the government for its losses and costs of recoupment, a portion of the potential damages award has a deterrent or retributive purpose. *Kennedy*, 120 N.M. at 633-34, 904 P.2d at 1058-59. This factor, then, falls in favor of finding FATA to be punitive in nature.

### 5. Behavior Already a Crime

**{31}** Our previous cases involving double jeopardy claims suggest that when the behavior being punished is already a crime it points in favor of finding the statute to be punitive in nature under the *Mendoza-Martinez* test. *See Druktenis*, 2004-NMCA-032, ¶ 32; *Kirby*, 2003-NMCA-074, ¶ 35. Here, the bringing of a qui tam civil action does not preclude the state from pursuing a criminal complaint alleging fraud based on the same set of facts. *See* §§ 44-9-6(G), (H); -7(C)(2); -9(C); -12(B). Indeed, FATA's remedies "are not exclusive and shall be in addition to any other remedies provided for in any other law." Section 44-9-14. As Plaintiff admits, FATA prohibits the same actions that give rise to not only the torts of fraud and reckless misrepresentation but also criminal penalties, such as criminal fraud, NMSA 1978, § 30-16-6 (2006), and securities fraud, NMSA 1978, § 58-13C-508 (2009).

**{32}** This factor falls in favor of finding FATA to be punitive in nature.

### 6. Alternative Purpose

**{33}** A statute may be considered more remedial than punitive when "[t]he civil penalty is one of several tools of regulatory and administrative enforcement" and "the legislative purpose . . . was that the penalty constitute an integral part of an overall remedial regulatory and administrative scheme to protect the public." *Kirby*, 2003-NMCA-074, ¶ 26. In the area of double jeopardy, a penalty does not create constitutional concerns "so long as the sanction reasonably serves regulatory goals adopted in the public interest." *Kennedy*, 120 N.M. at

16

631, 904 P.2d at 1056; *see Nunez*, 2000-NMSC-013, ¶ 89 (finding a punitive purpose to a sanction when it "is unrelated to the cost of ameliorating the harm"); *Denison v. Tocker*, 55 N.M. 184, 187, 229 P.2d 285, 286 (1951) (finding the federal Housing and Rent Act to represent a regulatory scheme, making it "clear that [C]ongress thereby intended to create a remedy rather than impose a penalty" via a treble damages sanction). Thus, we look for multiple "tools" of enforcement and the presence of a comprehensive regulatory scheme in FATA that would deem it remedial in nature.

**{34}** In *Kirby*, we found an alternative, remedial purpose related to the Securities Act's civil penalty, which was given "added substance" by the fact that funds from the civil penalty were earmarked for public education and training on securities matters. 2003-NMCA-074, ¶ 36. In *Kirby*, the purpose of the Securities Act was "to regulate" the financial industry, and we concluded that "[t]he civil penalty, together with the use of penalty funds for education and training, serve that purpose." *Id.* Similarly, in *State v. Block*, 2011-NMCA-101, ¶¶ 2, 33-34, 150 N.M. 598, 263 P.3d 940, we found the Voter Action Act, as part of "our comprehensive Election Code," to be "a regulatory and administrative scheme" that was "directed at establishing a public campaign financing system that is subject to considerable oversight by the office of the secretary of state." The statute analyzed in *Block* provided for the certification of candidates, "management of and disbursements from the public election fund," and the oversight of "candidate expenditures and reporting requirements." *Id.* ¶ 33. Similarly, the Securities Act in *Kirby*, since recodified as the New Mexico Uniform Securities Act, spans seven sections and includes a broad range of regulatory provisions, including registration requirements, penalties for fraud and other liabilities, and administrative enforcement procedures. *See* NMSA 1978, §§ 58-13C-101 to -701 (2009). By contrast, FATA is just one section under the umbrella heading of "Miscellaneous Civil Law Matters." We do not find in FATA, as we did in *Kirby* or *Block*, "a comprehensive regulatory and administrative legislative scheme." *Kirby*, 2003-NMCA-074, ¶ 37. In addition, FATA directs that proceeds from damage awards, fines and penalties are not to be earmarked for specific purposes relating to false claims, but rather are to be distributed as follows:

> (1) proceeds in the amount of the false claim paid and attorney fees and costs shall be returned to the fund or funds from which the money, property or services came;

> (2) civil penalties shall be deposited in the current school fund pursuant to Article 12, Section 4 of the constitution of New Mexico; and

> (3) all remaining proceeds shall be deposited as follows:

> (a) one-half into a fund for the use of the attorney general in furtherance of the obligations imposed upon that office by [FATA] [44-9-1]; and

17

(b) one-half into the general fund.

Section 44-9-7(E). Thus, under FATA, a significant portion of the proceeds after a successful prosecution of a claim go to either the school fund or the general fund rather than to the furtherance of a regulatory scheme. *Cf. Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 777 (1994) (noting that "a so-called civil 'penalty' may be remedial in character if it merely reimburses the government for its actual costs arising from the defendant's criminal conduct").

**{35}** Although some of FATA sanctions clearly have an alternative remedial purpose, we conclude that those remedial aspects fall short of the comprehensive regulatory scheme found in the Securities Act in *Kirby* and the Voters Action Act in *Block*. Giving Plaintiffs the benefit of the doubt, however, a limited, literal interpretation of this factor would tilt it in favor of finding FATA to be remedial in nature; there is *some* remedial purpose that is rationally related to the statute's regulatory function. However, the weakness of this factor affords it little weight, especially as we proceed to the next factor.

**7.     Whether the Punishment Is Excessive**

**{36}** The United States Supreme Court cautions that the analysis under this factor "is not an exercise in determining whether the [L]egislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105.

**{37}** We do not look at the actual sanctions at stake in a specific case but rather at the purposes furthered under the statute in question. *See Kennedy*, 120 N.M. at 631, 904 P.2d at 1056 ("In order to ascertain whether these sanctions are punitive[,] we must look at the purposes that the sanctions actually serve. We make this determination by evaluating the government's purpose in enacting the legislation, rather than evaluating the effect of the sanction on the defendant." (citation omitted)).

**{38}** Turning to FATA, as noted in the previous section, the remedial aspects of the Act are less significant than those aspects in other comprehensive regulatory schemes and, therefore, a lower bar exists for a punishment to be considered excessive in relation to any alternative remedial purpose. In previous cases revolving around comprehensive regulatory schemes, the sanctions were found to have a close and substantial relationship to remedial purposes. *See, e.g.*, *One (1) 1984 White Chevy Ut.*, 2002-NMSC-014, ¶ 16 (finding a "clear nexus between" the vehicles seized by the state and the crime of driving while intoxicated); *Kennedy*, 120 N.M. at 634, 904 P.2d at 1059 (finding the deterrent (i.e. punitive) aspects of revoking a driver's license after a conviction of driving while intoxicated to be "incidental to the government's purpose of protecting the public from licensees who are incompetent, dishonest, or otherwise dangerous"); *Block*, 2011-NMCA-101, ¶ 34 ("It is . . . apparent that the Act, as a whole, is directed to a remedial purpose."). In the case before us, we conclude that one-third of the treble damages award and the fines of up to $10,000 do not have a clear

18

nexus to any remedial purpose under FATA. This is especially true considering that a significant portion of the proceeds are not earmarked for a specific remedial purpose, but rather are to be deposited in the State's education fund or general fund. As a result, because a substantial portion of a given damages award serves no remedial purpose, it could be said that "the sanction greatly exceeds the quantum of harm." *Nunez*, 2000-NMSC-013, ¶ 89. Indeed, with litigation costs and attorney fees also available to a plaintiff, the sanction of up to $10,000 per violation plus a significant portion of the treble damages equivalent to the actual harm caused shows that the penalties under FATA, unlike those in *One (1) 1984 White Chevy Ut.* and *Kennedy*, outstrip any civil, remedial purpose of the statute, such that "its scope notably exceeds this purpose." *Smith*, 538 U.S. at 116 (Ginsburg, J., dissenting). We cannot say that FATA's sanctions provisions entail "an overall remedial regulatory and administrative scheme to protect the public." *Kirby*, 2003-NMCA-074, ¶ 26. On the contrary, because the treble damages provision and per-violation penalties of up to $10,000 create "a disproportionality between the potential liability of a defendant and the harm to the government[,]" this factor weighs in favor of finding that the treble damages sanctions are punitive in nature and effect. *NSI, Inc.*, 736 F. Supp. 2d at 501.

**{39}** In sum, we find this factor falls in favor of finding FATA to be penal in nature.

### 8. Summation of the Seven Factors

**{40}** We conclude that five of the seven factors show FATA to be punitive in nature. Therefore, "the legislation [is] sufficiently punitive in its effect that, on balance, the punitive effects outweigh the remedial effect." *One (1) White Chevy Ut.*, 2002-NMSC-014, ¶ 11. The treble damages provision has historically been regarded as punishment; a finding of scienter is an element of the violation; the damages involved promote the traditional aims of punishment—retribution and deterrence; the behavior being sanctioned is already considered a crime; and the punishment is excessive when compared with its alternative regulatory or remedial purpose.

### G. New Cause of Action

**{41}** Plaintiffs' final argument is that the underlying purpose of the Ex Post Facto Clause is to preclude the Legislature from declaring to be unlawful acts that were lawful at the time they were committed. Plaintiffs argue that FATA is not the type of legislation targeted by the Ex Post Facto Clause because FATA does not create a new cause of action but simply incorporates the torts of fraud and misrepresentation, which have long been actionable at common law and under various New Mexico statutes. They contend that Defendants cannot reasonably argue that their actions were lawful at the time they took place.

**{42}** In considering whether a statute may be implemented retroactively, the court must ask "whether the new provision attaches new legal consequences to events completed before its enactment." *Landgraf*, 511 U.S. at 269-70. The United States Supreme Court in *Hughes Aircraft Co.*, 520 U.S. at 947-48, rejected the premise that a new statute which allows a qui

19

tam plaintiff to pursue already-prohibited behavior does not constitute a new cause of action. The Court held that an amendment to the jurisdictional provision of the FCA permitting qui tam suits did create a new cause of action and could not be applied retroactively. *Id.* at 948-49. The court stated: "The extension of an FCA cause of action to private parties in circumstances where the action was previously foreclosed is not insignificant." *Id.* at 949. Qui tam plaintiffs "are motivated primarily by prospects of monetary reward rather than the public good" and "are thus less likely than is the [g]overnment to forgo an action," and "[i]n permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially creates a new cause of action." *Id.* at 949-50.

**{43}** We have the same set of circumstances before us as the Court did in *Hughes*, and we adopt the same logic. We therefore conclude that FATA's qui tam component creates a new cause of action and thus is subject to the retroactivity prohibitions of the Ex Post Facto Clause.

## H. Severability

**{44}** Plaintiffs suggest that, even if we conclude that FATA violates the Ex Post Facto Clause, we rewrite the treble damages provision to a more constitutionally favorable double damages provision. We decline to do so for two reasons, and we instead find the retroactivity clause severable.

**{45}** We show deference to the Legislature when it comes to altering the language of a statute. *See State v. Frawley*, 2007-NMSC-057, ¶ 30, 143 N.M. 7, 172 P.3d 144 ("It is a fundamental principle that we cannot rewrite or add language to a statute in order to make it constitutional. Thus, the question of how to ultimately fix the constitutional problem . . . lies with the Legislature." (citation omitted)), *superseded by statute on other grounds as stated in State v. Consaul*, 2012 WL 868811 (Ct. App. 2012) (unpublished opinion). Our courts have long held "that the fixing of penalties is a legislative function and what constitutes an adequate punishment is a matter for legislative judgment." *McCutcheon v. Cox*, 71 N.M. 274, 277-78, 377 P.2d 683, 686 (1962). Thus we "avoid a type of judicial surgery that inevitably would remove provisions that were central to the original mechanisms" of the statute. *Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 40, 146 N.M. 256, 208 P.3d 901.

**{46}** The first reason for not rewriting the treble damages section of FATA, as noted throughout Section E above, is that it is not merely the treble damages award that presents a problem with applying the statute retrospectively; the fines and penalties of up to $10,000 per violation of the Act also have a punitive aspect to them. Reducing the damage award from threefold to double the amount in question still would not make the total damage award compensatory and remedial in nature.

**{47}** Second, rewriting the treble damages section of FATA would change a key characteristic of the statute. FATA offers an incentive for violators to cooperate with the

State by allowing the State to reduce the treble damages award to double damages. *See* Section 44-9-3(D). Altering the statute to change the maximum award from treble damages to double damages would undermine that incentive built into the Act.

**{48}** We now look to whether the retroactivity provision may be severed from the statute to preserve its constitutionality. While it is black-letter law that we are loath to rewrite a statute,

> it is equally fundamental "that a part of a law may be invalid and the remainder valid, where the invalid part may be separated from the other portions, without impairing the force and effect of the remaining parts, and if the legislative purpose as expressed in the valid portion can be given force and effect, without the invalid part, and, when considering the entire act it cannot be said that the legislature would not have passed the remaining part if it had known that the objectionable part was invalid."

*Frawley*, 2007-NMSC-057, ¶ 30 (quoting *Bradbury & Stamm Constr. Co. v. Bureau of Revenue*, 70 N.M. 226, 230-31, 372 P.2d 808, 811 (1962)).

**{49}** FATA contains a severability clause that allows the remainder of the statute to remain in effect if any part of the law is invalidated. *See* 2007 N.M. Laws, Ch. 40, § 15. The retroactivity portion of FATA reads:

> A civil action pursuant to [FATA] may be brought at any time. A civil action pursuant to [FATA] may be brought for conduct that occurred prior to the effective date of that act, but not for conduct that occurred prior to July 1, 1987.

Section 44-9-12(A).

**{50}** Allowing FATA to be applied prospectively but eliminating the sentence that permits retroactive application would not "impair[] the force and effect of the remaining parts" of the statute. *Frawley*, 2007-NMSC-057, ¶ 30 (internal quotation marks and citation omitted). All other aspects of FATA, including the treble damages provision, could be applied to actions that occurred after July 1, 2007, and the entirety of the remaining portions of the Act could still "be given force and effect" in full. *Id.* (internal quotation marks and citation omitted). Finally, the Legislature gave no indication that retroactive application of the Act was such an indispensable part of FATA that legislators would have shelved the entire action had retroactivity not been an option. *See Prot. & Advocacy Sys. v. City of Albuquerque*, 2008-NMCA-149, ¶ 73, 145 N.M. 156, 195 P.3d 1 (stating that "a severability clause raises a presumption that the legislating body would have enacted the rest of the ordinance without the void section" (internal quotation marks and citation omitted)).

**{51}** We therefore conclude that the retroactivity provision of FATA may be severed from

FATA, which shall otherwise remain in full force and effect as it is applied prospectively.

## III. CONCLUSION

**{52}** For the foregoing reasons we affirm the district court's legal conclusion that retroactive application of FATA is unconstitutional and the court's decision to sever the retroactive aspects from the statute, and we remand for further proceedings consistent with this Opinion. As noted above, as to the question of subject matter jurisdiction, we find the development of the record inadequate at this point for appellate review.

**{53}  IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for _State ex rel. Foy v. Austin Capital Mgmt., Ltd._, No. 31,421**

**APPEAL AND ERROR**
Interlocutory Appeal
Standard of Review

**CONSTITUTIONAL LAW**
Ex Post Facto

**JURISDICTION**
Subject Matter

**GOVERNMENT**
Fraud Against Taxpayers Act
Public Employees
Public Funds

**REMEDIES**
Punitive Damages

**STATUTES**

Constitutionality
Interpretation
Legislative Intent
Retroactivity
Rules of Construction
Severability